DANIEL J. MORRISON, a Minor, by Barbara B. Morrison, his Mother and Best Friend, Plaintiff-Appellee and Cross-Appellant, v. CHICAGO BOARD OF EDUCATION, Defendant-Appellant and Cross-Appellee.

First District (2nd Division)   No. 1—88—2450

Opinion filed September 12, 1989.

DiVITO, J., specially concurring.
BILANDIC, P.J., dissenting in part.

Patricia J. Whitten, of Board of Education, of Chicago (Karen Gatsis Anderson and Edward J. Santiago, of counsel), for appellant.

John J. Morrison, of Chicago, for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Defendant appeals from an order of the circuit court granting in part plaintiff's motion for a preliminary injunction and ordering the Chicago Board of Education to assess the readiness of plaintiff to attend kindergarten pursuant to the provisions of the Illinois School Code (Ill. Rev. Stat. 1985, ch. 122, par. 1—1 *et seq.*). Plaintiff cross-appeals from the denial of his requests for preliminary and permanent injunctions seeking to compel defendant to enroll him, based on various asserted grounds.

Defendant raises the following issue on appeal: whether the trial court erred in ordering it to assess the readiness of the plaintiff to attend school in light of the fact that the language of the statute relating to assessments was clearly permissive. Plaintiff raises the following issues on cross-appeal: whether the trial court erred in denying his motion for preliminary and permanent injunctive relief because (a) defendant operates on a full year school basis and he was five years of age on September 4, 1988; (b) his statutory right to an equal education entitles him to enrollment; or (c) reading the statute and rules literally, his birth date actually qualified him for enrollment; and whether defendant violated his civil rights when it initially refused to enroll him, or alternatively, to assess his readiness to attend school.

Plaintiff, Daniel Morrison, is a minor child who attained the age of five on September 4, 1988, and who sought admission into the kindergarten program at Edgebrook School, operated by defendant, the Board of Education of the City of Chicago (the Board). At all times relevant to this cause, defendant's actions were governed by the Illinois School Code (Ill. Rev. Stat. 1985, ch. 122, par. 10—20.12), and certain rules adopted by the Board pursuant thereto which establish the school year and school age. Section 10—20.12 (Ill. Rev. Stat. 1985, ch. 122, par. 10—20.12) provides as follows:

"School year—School age. To establish and keep in operation in each year during a school term of at least the minimum length required by Section 10—19, a sufficient number of free schools for the accommodation of all persons in the district

over the age of 5 and under 21 years, and to secure for all such persons the right and opportunity to an equal education in such schools; provided that children who will attain the age of 5 years by November 1 after the first day of the 1986-1987 school term, October 1 after the first day of the 1987-1988 school term, and September 1 of the year of the 1988-1989 school term and each school term thereafter may attend school upon the commencement of such term. Based upon an assessment of a child's readiness to attend school, a school district may permit a child to attend school prior to the dates contained in this Section. In any school district operating on a full year school basis children who will attain the age of 5 within 30 days after the commencement of a term may attend school upon the commencement of such term. The school district may, by resolution of its board, allow for a full year school plan."

Section 6—2 of the Board Rules provides as follows:

"Admission to Elementary School. All children residing within the limits of the city who are not otherwise disqualified shall be entitled at the beginning of the school year to enter kindergarten or first grade if they will have reached the age of five or six years, respectively, by October 1 of the 1987-88 school year and by September 1 of the 1988-89 school year and each year thereafter. Based upon an assessment of a child's readiness to attend school, a child may be permitted to attend school prior to the dates contained in this Rule. The principal of the elementary school in the sub-district in which they reside shall require the parent to present birth certificate, baptismal record, or other satisfactory evidence of the date and place of birth."

Because plaintiff would not have attained the age of five by the statutorily mandated September 1 cutoff date, defendant refused to enroll him or to assess his readiness to attend school; and although defendant conducted readiness assessments for children who were going to be five years of age by November 1 of the 1986-87 school year and for children who were going to be five years of age by October 1 of the 1987-88 school year, it determined that it would not be doing so for the 1988-89 school year but would instead strictly adhere to the September 1 cutoff date.

Plaintiff subsequently filed a complaint for injunctive and other relief and a motion for a preliminary injunction requesting, *inter alia*, that the court order defendant to assess the readiness of plaintiff to attend school pursuant to section 10—20.12 (Ill. Rev. Stat. 1985, ch.

122, par. 10—20.12), and on August 10, 1988, the court granted plaintiff's motion and ordered defendant to assess the readiness of plaintiff to attend school prior to the date prescribed by the School Code. On August 22, 1988, the court held a further hearing on the remaining counts of plaintiff's complaint and denied plaintiff's motion for injunctive relief as to those counts.

Defendant's appeal and plaintiff's cross-appeal followed. Defendant did in fact assess the readiness of plaintiff and enrolled him in kindergarten after the filing of this appeal.

## I

■ Plaintiff first argues that this appeal is moot inasmuch as the Board voluntarily conceded plaintiff's asserted right when it enrolled him in school after it had assessed his readiness, citing *Panduit Corp. v. All States Plastic Manufacturing Co.* (1980), 84 Ill. App. 3d 1144, 405 N.E.2d 1316:

"A case becomes moot when, pending the decision on appeal, events occur which render it impossible for the reviewing court to grant effectual relief to any party involved in the suit." *Panduit*, 84 Ill. App. 3d at 1148.

We do not deem the case *sub judice* to be moot since Illinois recognizes a public interest exception to the mootness argument raised by defendant. Under this doctrine, a case may be decided on appeal despite its mootness if the issues raised are of substantial public interest. (*Iowa-Illinois Gas & Electric Co. v. Illinois Commerce Comm'n* (1980), 91 Ill. App. 3d 96, 414 N.E.2d 287.) The test for determining whether a sufficient degree of public interest exists requires that three elements be considered: (1) the public nature of the question presented; (2) the need for an authoritative determination for the future guidance of public officials; and (3) the likelihood of recurrence of the question. (*City of Chicago v. Leviton* (1985), 137 Ill. App. 3d 126, 129, 484 N.E.2d 438, citing *People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 104 N.E.2d 769, *cert. denied* (1952), 344 U.S. 824, 97 L. Ed. 642, 73 S. Ct. 24.) Each criterion must be met to avoid dismissal of moot questions on appeal. *City of Chicago v. Leviton*, 137 Ill. App. 3d at 129.

■ The facts presented in this case easily come under the public interest exception: first, the issue raised is of a public nature in that it affects the rights of a large number of children to a clear, early and effective determination of their entitlement to enroll in our public schools; second, there is a desire and a need for guidance and clarification respecting the law regarding readiness assessments among Illi-

nois public school districts; and third, there is more than a great likelihood that the issue will recur.

## II

Defendant contends that the circuit court erred in ordering it to assess the readiness of plaintiff to attend school because the language of the statute relating to assessments is clearly permissive. It argues that it is well established that where the legislature has empowered a school board to perform certain functions, the courts will not interfere with the exercise of such powers nor substitute their discretion for that of the school board unless the board's action is palpably arbitrary, unreasonable, or capricious. (*Braught v. Board of Education* (1985), 136 Ill. App. 3d 486, 483 N.E.2d 623; *Tyska v. Board of Education* (1983), 117 Ill. App. 3d 917, 453 N.E.2d 1344.) Defendant further maintains that there was nothing arbitrary, unreasonable or capricious about its decision to adhere strictly to the school age cutoff date imposed by the Illinois School Code and not to conduct readiness assessments, and it urges that since the court improperly substituted its judgment for that of defendant in ordering it to assess plaintiff's readiness to attend school, the court's order should be reversed.

We agree. Accordingly, we reverse the trial court's granting of a preliminary injunction which ordered defendant to assess the readiness of plaintiff. Inasmuch as the facts are undisputed, we need be concerned only with the trial court's application of the law to those facts, and issues of law are determined on appeal independently of the trial court's judgment. *Crum v. Gulf Oil Corp.* (1979), 70 Ill. App. 3d 897, 388 N.E.2d 1008.

Plaintiff argues that defendant was required to make the readiness assessment, which would serve as the basis of its enrollment decision, pointing to the following provision of section 10—20.12 (Ill. Rev. Stat. 1985, ch. 122, par. 10—20.12):

> "Based upon an assessment of a child's readiness to attend school, a school district may permit a child to attend school prior to the dates contained in this Section."

Plaintiff notes that defendant relies entirely upon the use of the word "may" in the above-quoted sentence, and claims that this reliance is misplaced. Plaintiff argues that the word "may" does not give defendant discretion in making readiness assessments; rather, plaintiff contends, it gives defendant discretion in deciding whether or not to enroll a child on the basis of the assessment. Plaintiff contends that it follows logically that defendant is obligated to make an assessment of the child upon the request of the parents, and that once the assess-

ment has been made, defendant then has the discretion, based upon the assessment, to make its enrollment decision. Plaintiff further argues that defendant's duty to assess is entirely consistent with the statutory scheme of section 10—20.12 and with defendant's own understanding of the scheme as expressed in its published, written policies.

Prior to its amendment by Public Act 84—126, effective August 1, 1985, section 10—20.12 provided for a December 1 cutoff and did not contain the provision here at issue regarding readiness assessments. As noted above, the amendment gradually rolled back the cutoff date to November 1 for the 1986-87 school year, to October 1 for the 1987-88 school year, and September 1 for the 1988-89 school year, while providing for readiness assessments for children born after the cutoff dates. Accordingly, plaintiff maintains, the requirement of readiness assessments goes hand in hand with the rollback of cutoff dates; having inserted the new cutoff dates, the legislature also provided a way to keep the school doors open to younger children, like plaintiff, who were ready for school.

■ We hold the trial court's order to be contrary to the legislative intent of the General Assembly as expressed in the clear language of the statute. Statutes must be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute, and absent some clear legislative intent to the contrary, terms are to be given their ordinary and commonly understood meaning. The language used in a statute is the primary source for determining legislative intent, and where that language is certain and unambiguous, the proper function of the courts is to enforce the statute as enacted. (*General Motors Corp., Fisher Body Division v. Industrial Comm'n* (1975), 62 Ill. 2d 106, 338 N.E.2d 561.) The statute as a whole must be evaluated with each provision being construed in light of the statute's general purpose (*I.F. v. Department of Children & Family Services* (1986), 146 Ill. App. 3d 68, 496 N.E.2d 1162), and the court must choose a construction which gives the statute a clear, logical meaning, rather than a meaning that renders the statute illogical, useless or unreasonable. *City of Rolling Meadows v. Kyle* (1986), 145 Ill. App. 3d 168, 494 N.E.2d 766.

In the case at bar, section 10—20.12 of the School Code is clear and unambiguous. It provides the Board with discretion to permit a child to attend school prior to the cutoff date subject only to the condition that it do so based on a child's assessed readiness to attend. It is to be noted that the legislature did not provide that school districts "shall" or "must" conduct readiness assessments, in which case con-

ducting assessments would be an obligation. (*People v. Emrich* (1986), 113 Ill. 2d 343, 498 N.E.2d 1140.) And we note that nowhere does the statute require action on the part of the Board upon anyone's request.

The general purpose of the statute is to impose an age limit on students eligible to attend public schools. The legislature, in the debates involving this provision, stated that the imposition of an earlier cutoff date was due to studies that have shown that the older a child is upon entering kindergarten the more successful the schooling experience. 84th Ill. Gen. Assem., Senate Proceedings, July 2, 1985, at 98.

■ In evaluating the statute in light of its general purpose, it is clear that the legislature intended to impose a strict age limitation on students eligible for kindergarten or first grade. Having imposed the September 1 cutoff, the legislature expressly granted school districts the *discretion* to permit children to attend prior to this date based on a structured assessment of their readiness to attend. This grant in no way mandated such testing.

The dissent in this case agrees "with the majority that the power to assess the readiness of a child to attend school if the child has not reached the age of five by September 1 is *discretionary under the statute*," but it reasons, "[b]y the adoption of *Rule 6—2*, the board assumed the duty to assess a child's readiness so that the child may be permitted to attend school prior to the dates contained in the rule." (Emphasis added.) (188 Ill. App. 3d at 600-01.) However, the dissent neglects to explain the process by which a law it readily acknowledges to be *permissive* when enacted by the legislature becomes metamorphosed into a *duty* when it is redundantly adopted by a local board of education. Even plaintiff recognizes no such transformation, for, as noted above, his argument throughout this entire proceeding has been that "the Board is obligated to make an assessment of the child upon request of the parents," and that "the use of the word 'may' does not give the Board discretion *in making readiness assessments*," whether under the statute *or* the rule. "Rather," he concludes, "it gives the Board discretion *in deciding whether or not to enroll a child on the basis of the assessment*." (Emphasis added.) More important, nowhere does plaintiff make the argument that the mere adoption of a rule or policy in the precise words of a statute, whether the language of that law be discretionary or mandatory, charges the rule or policy by which the statute is adopted with a completely opposite effect. Nor does *Tyska*, the case cited in the dissent, come anywhere near the neighborhood of authority for the proposition advanced by the dissent.

Defendant's decision was not arbitrary, unreasonable or capricious, but in harmony with the language and purpose of the School

Code. The court's order requiring it to assess the readiness of the plaintiff to attend school is contrary to law, and consequently reversed.

### III

Plaintiff cross-appeals, asserting that the circuit court erred in denying plaintiff's motion for preliminary and permanent injunctive relief because: (1) defendant operates on a full year school basis and the plaintiff was five years of age on September 4, 1988; (2) the plaintiff's statutory right to an equal education entitles him to enrollment; or (3) reading the statute and rules literally, the plaintiff's birth date actually qualified him for enrollment.

■ Plaintiff's initial argument is that defendant operates some of its schools on a full year school basis; consequently, he was entitled to enrollment in kindergarten. Plaintiff cites section 10—19.1 (Ill. Rev. Stat. 1985, ch. 122, par. 10—19.1), which states:

"Full year school plan. Any school district may, by resolution of its board, operate one or more schools within the district on a full year school plan approved by the State Board of Education. Any board which operates under this Section shall devise a plan so that a student's required attendance in school shall be for a minimum term of 180 days of actual attendance, including not more than 4 institute days, during a 12 month period, but shall not exceed 185 days. Under such plan, no teacher shall be required to teach more than 185 days. A calendar of 180 days may be established with the approval of the State Board of Education." (Ill. Rev. Stat. 1985, ch. 122, par. 10—19.1.)

Plaintiff also notes the following portion of section 10—20.12 (Ill. Rev. Stat. 1985, ch. 122, par. 10—20.12):

"In any school district operating on a full year school basis children who will attain age 5 within 30 days after the commencement of a term may attend school upon the commencement of such term." Ill. Rev. Stat. 1985, ch. 122, par. 10—20.12.

Plaintiff asserts that a full school year basis means nothing more than a plan whereby a student's attendance in school is for a minimum of 180 days of actual attendance, not including four institute days, during a 12-month period, which does not exceed 185 days. Plaintiff argues that he is entitled to enrollment under sections 10—19.1 and 10—20.12, as defendant operates under a 180- to 185-day per school year basis and meets the statutory definition of a full year school plan.

We disagree. While section 10—19.1 permits any school district to

operate one or more schools on a full year school basis, there is nothing in the statute that supports plaintiff's interpretation of what constitutes a full year school plan. All Illinois school districts, including the defendant district, operate on a school calendar term basis (as opposed to a calendar year basis) pursuant to section 10—19, which establishes the length of the school term for all school districts. This section provides in relevant part:

"Each school board shall annually prepare a calendar for the school term, specifying the opening and closing dates and providing a minimum term of at least 185 days to insure 176 days of actual pupil attendance *** Except as provided in Section 10—19.1, the board may not extend the school term beyond such closing date unless that extension of term is necessary to provide the minimum number of computable days." Ill. Rev. Stat. 1985, ch. 122, par. 10—19.

It is clear from a reading of the foregoing section that a full year school basis is the exception to the general requirement that school districts prepare a specific calendar under which they will operate. Schools operating on a full year school basis differ significantly from those schools operating under section 10—19. Schools operating on a full year school basis operate four consecutive 45-day terms in order to insure 180 days of actual attendance. These terms are separated by 15-day recess periods. Defendant's calendar identifies only the Cook County Juvenile Temporary Detention Center and its branches and the Cook County jail as schools which operate throughout the calendar year. But for these two exceptions, operated in cooperation with corrections authorities, neither of which exceptions is relevant to this case, it is clear that defendant does not operate on a full year school basis. Consequently, we affirm the lower court as to this issue.

■ Second, plaintiff argues that section 10—20.12 (Ill. Rev. Stat. 1985, ch. 122, par. 10—20.12) grants "the right and opportunity to an equal education" to all children "over the age of 5." Plaintiff argues that defendant's policy denies him any education at all until he is six years of age, and even then only to provide him with a part-time kindergarten education until he is seven years of age. Plaintiff argues that this result is particularly egregious in view of the fact that he was five years of age at the commencement of the 1988-89 school term.

Plaintiff cites *Morgan v. Board of Education* (1974), 22 Ill. App. 3d 241, 317 N.E.2d 393, as controlling. In *Morgan*, he asserts, the appellate court upheld a mandatory injunction ordering the school district to enroll plaintiff in first grade, holding that the school district's

refusal to so enroll her denied plaintiff her statutory right to an equal education and her right to equal protection under the laws. Plaintiff argues that the Illinois legislature has now expanded the right of equal education to five-year-olds, and that a straightforward application of *Morgan* to the case at bar dictates that his right to an equal education entitles him to enrollment.

Defendant has not violated plaintiff's right to an equal education. Board Rule 6—2 provides for the equal education of children who will have attained the age of five and six, as the case may be, by the legislatively mandated September 1 cutoff date; nothing can change the fact that plaintiff could not be five by September 1 of the 1988-89 school year, nor would he be six by September 1 of the 1989-90 school year.

Plaintiff's reliance on *Morgan* is unwarranted. Unlike the instant case, the plaintiff in *Morgan* was six years old and had already attended kindergarten. The issue in that case was whether the school district's requirement that she pass a readiness assessment before going on to the first grade denied her an equal education in light of the fact that seven-year-olds who moved into the school district were automatically registered in the first grade without taking such an examination. The plaintiff in *Morgan* was being forced to repeat part-time kindergarten when other children in her category were being admitted as full-time first graders without an assessment. The issue in the case at bar is not whether part-time kindergarten is equal to full-time first grade, but rather whether plaintiff fit within the age classification articulated by the School Code. Plaintiff was not entitled to enroll in kindergarten.

■ Third, plaintiff argues that his birth date entitles him to enrollment under a literal reading of the statute and defendant's rules. Plaintiff contends that a literal application of section 10—20.12 (Ill. Rev. Stat. 1985, ch. 122, par. 10—20.12) shows that "September 1" as used in the statute means September 1, 1989, not 1988. Plaintiff reaches this conclusion by noting that the Board's school year did not begin until September 5, 1988. Since September 1, 1988, was prior to the start of the school term, September 1, 1988, was not "of the year of the 1988-1989 school term," as it precedes the school term. Therefore, plaintiff argues, "September 1 of the year of the 1988-1989 school term" must mean September 1, 1989, and since he is now and was five years of age on September 1, 1989, plaintiff asserts that he was entitled to enrollment.

Plaintiff's legal reasoning is pinched. Section 10—20.12 clearly states that "children who will attain the age of 5 years by * * * Sep-

tember 1 of the year of the 1988-1989 school term *** may attend school upon the commencement of such term." (Ill. Rev. Stat. 1985, ch. 122, par. 10—20.12.) Contrary to plaintiff's contention, Board Rule 6—10 merely established the date for the commencement of classes for the 1988-89 school term. The 1988-89 school term extends from September 1988 through June 1989. September 1989 commences the 1989-90 school term. The legislature clearly granted defendant discretion in deciding when to commence classes, and the fact that defendant elected to begin the term after September 1 does not in any way affect the age limitation that the legislature clearly and unambiguously enacted.

■ Plaintiff's final argument is that defendant violated the minor plaintiff's civil rights when it initially refused to enroll him, or alternatively, to assess his readiness to attend school. Plaintiff avers that he has an absolute statutory right to enrollment for the 1988-89 school term. Alternatively, he argues that he had a statutory right to have defendant assess his readiness to attend school and to have it decide whether or not to enroll him "based upon" said assessment. Plaintiff asserts that there is no question but that defendant is a public governmental body, and there is no question but that the Board acted under color of law in denying him enrollment and refusing to make an assessment of his readiness to attend school. As a result of the Board's actions, plaintiff claims that he had to file suit to protect his claimed statutory civil rights.

Plaintiff adds that if his theories have any validity, it necessarily follows that the Board, under color of law, deprived him of his statutory civil rights and is liable to him under 42 U.S.C. section 1983 (1982), and the trial court should have so found. Plaintiff fails to inform us as to where he finds this gloss. At any rate, since plaintiff recognizes that his section 1983 action lacks viability if the other theories he advances in this cause have no validity, and since it is quite evident that we have in fact held such theories to be without foundation, it follows that his purported civil rights action is equally infirm, thus foreclosing any further discussion of this last claim.

Reversed in part; affirmed in part.

JUSTICE DiVITO, specially concurring:

I write in special concurrence to make the following points:

(1) Insofar as Daniel J. Morrison is concerned, the issues on this appeal are, as he contends, moot: he has been assessed for early readiness and has already been enrolled as a student.

(2) The issues raised here, however, are of substantial public interest and should be addressed. We have been informed, for example, through an appropriate motion filed in this case, of a lawsuit which has been filed in the circuit court of Cook County which raises issues similar to those in this case.

(3) Considering the substantial public interest in the issue of readiness testing for those children who have not attained the age of five years by September 1, the following points should be made succinctly. Both of my colleagues agree that the language of the enabling legislation confers a discretionary power upon school districts to test children for early readiness. They disagree as to the effect of the Chicago Board of Education's adoption of Rule 6—2, which contains substantially the same language as the statute. It seems to me that the resolution of their disagreement is wholly dependent upon the Board's implementation of its adopted rule. If the Board denies readiness assessments to all children, such denial, it seems to me, represents a proper exercise of its discretionary ability under both the statute and the rule. If, however, the Board makes readiness assessments available to some children but not to all, a denial would represent an abuse of its discretionary ability.

(4) As the dissent notes, the mere amendment of Rule 6—2 by the Board, by not addressing the issue of early readiness assessments or by specifically discontinuing them, would put these "issues of substantial public interest" to rest.

PRESIDING JUSTICE BILANDIC, dissenting in part:

The fixing of a school age is a quasi-legislative function delegated to the Board of Education by the legislature. The Illinois School Code requires a school board to operate schools for all persons in the district over the age of five and under the age of 21, "to secure for all such persons the right and opportunity to an equal education in such schools; provided that children who will attain the age of 5 years by *** September 1 of the year 1988-1989 school term and each school term thereafter may attend school upon the commencement of such term. *Based upon an assessment of a child's readiness to attend school, a school district may permit a child to attend school prior to the dates contained in this Section.*" (Emphasis added.) Ill. Rev. Stat. 1985, ch. 122, par. 10—20.12.

I agree with the majority that the power to assess the readiness of a child to attend school if the child has not reached the age of five by September 1 is discretionary under the statute. "The legislature has placed the administration of schools within the domain of the

school board and courts will not interfere with the exercise of the board's powers unless such exercise is shown to be arbitrary or capricious. [Citations.] Where the legislature has empowered a school board to perform certain functions, the courts will not interfere with the exercise of such powers or substitute their discretion for that of the school board unless the board's action is palpably arbitrary, unreasonable or capricious. [Citations.]" *Tyska v. Board of Education of Township High School, District 214* (1983), 117 Ill. App. 3d 917, 922, 453 N.E.2d 1344.

In the exercise of power granted to it by the legislature, the Board adopted Rule 6—2, which provides in pertinent part:

"All children residing within the limits of the city who are not otherwise disqualified shall be entitled at the beginning of the school year to enter kindergarten *** if they will have reached the age of five *** years *** by September 1 of the 1988-89 school year and each year thereafter. Based upon an assessment of a child's readiness to attend school, a child may be permitted to attend school prior to the dates contained in this Rule."

The enabling legislation did not require the Board to assess readiness. "Rules adopted by the school board are to be filed for public inspection in the administrative office of the district. (Ill. Rev. Stat. 1981, ch. 122, par. 10—20.5.) A school board is bound to act in accordance with the rules and regulations it has made pursuant to statutory authority." *Tyska*, 117 Ill. App. 3d at 923.

By the adoption of Rule 6—2, the Board assumed the duty to assess a child's readiness so that the child may be permitted to attend school prior to the dates contained in the rule. If the Board decides that the policy is no longer viable, it is free to amend its rule and discontinue assessments of early readiness.

In my opinion, the majority went awry when it correctly interpreted the enabling legislation as granting discretionary power to the Board, and then ignored the rule by which the Board exercised its discretion.

I, therefore, respectfully dissent to that portion of the majority opinion.